IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| MIRANDA WHITWORTH, | * | |
| Plaintiff, | * | |
| vs. | * | CASE NO. 3:25-CV-72 (CDL) |
| OFFICER JASON ROACH, *et al.*, | * | |
| Defendants. | * | |

# O R D E R

With colorful lyrics, north Georgia singer songwriter Corey Smith makes the point that a law enforcement officer's badge is not a crown.[1] Notwithstanding the important, and sometimes dangerous, duties they must perform, officers of the law must follow the law. The fundamental law by which they are bound is the Constitution of the United States. That Constitution clearly prohibits the prolongation of traffic stops in an attempt to gather evidence based on hunches instead of probable cause or reasonable suspicion. It also prohibits an arrest when no probable cause exists to believe any crime has been committed. Based on Plaintiff's allegations in her complaint, Defendants crossed these Fourth Amendment constitutional lines, and the law makes them accountable for their alleged unlawful conduct. Accordingly, as explained in the

[1] Corey Smith, *F*** the Po-Po*, *on* Outtakes from the Georgia Theatre (Apple Music, Broken Bottle Music, LLC, July 8, 2008).

remainder of this Order, Defendants' motions to dismiss (ECF Nos. 27, 28 & 29) are denied.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL ALLEGATIONS

Miranda Whitworth alleges the following facts in support of her claims. The Court accepts these facts as true for purposes of the pending motions. On August 22, 2023 at 1:00 AM, Miranda Whitworth was the passenger in a vehicle driven by Mia Turner. Franklin County Officer Jason Roach stopped the vehicle near Exit 177 on I-85 North in Hart County, Georgia. Roach stated that he

stopped the vehicle for failure to maintain lane. After Roach stopped the vehicle, he asked Turner to step to the rear of the car and asked her whether there were drugs, weapons, or large amounts of cash in the car. Turner said no. Roach asked for consent to search the vehicle. Turner declined. Roach then approached Whitworth on the passenger side of the car and asked if Turner was always nervous. He also asked Whitworth if there were any drugs in the car. Whitworth said no. Roach told Whitworth that he wanted to search the vehicle based on Turner's nervousness. Whitworth declined. Roach ordered Whitworth to exit the vehicle.

After both Turner and Whitworth were out of the car, Roach went back to his patrol vehicle. He requested a K-9 unit but did not run Turner's driver's license, check the vehicle registration, or verify insurance. Dispatch informed Roach that no K-9 unit was available. Roach discussed the situation with Franklin County Officer Cochran, and they learned that Banks County, which was two counties away, had an available K-9 unit and would respond. Roach questioned Turner about her drug history. He administered a field sobriety test even though Turner had denied using drugs and did not appear intoxicated. Turner passed. Roach then radioed for a female officer to come to the scene and search Turner and Whitworth, even though Roach had no reasonable suspicion of criminal activity or probable cause for a search. Franklin County Officer Nunn responded

and conducted personal searches of both Turner and Whitworth, but she found no contraband.

Approximately thirty-seven minutes after Roach initiated the traffic stop, the Banks County K-9 unit arrived. The front passenger window was open, and Cochran cracked open the rear passenger door. The K-9 handler walked the dog around the vehicle twice. When they reached the passenger window the second time, the handler ran his hand up the car door to the window, and the dog jumped into the car through the window. There is no allegation that the K-9 handler identified this behavior as an alert, but Roach claimed that this behavior was an alert that gave him probable cause to search the vehicle. The officers began searching the vehicle. Officers found Whitworth's prescription medication, but they concluded that it was legitimate. While searching the trunk, Roach turned around and said that Turner and Whitworth were under arrest for drugs, even though officers found no drugs or contraband in the vehicle. Whitworth asked what drugs they were being arrested for, and Roach refused to answer. He did not show her the alleged drugs. Whitworth asserts that there were no drugs or contraband, and she alleges that Defendants Roach, Nunn, and Cochran fabricated evidence during and after the search of the vehicle to support the arrest. Although a criminal case was brought against Whitworth, all charges have been dismissed.

Whitworth brought claims under 42 U.S.C. § 1983 against Roach, Nunn, and Cochran for violations of her Fourth Amendment right to be free of unreasonable searches and seizures based on the alleged prolonged detention, unreasonable search, and false arrest.[2]

DISCUSSION

Roach, Nunn, and Cochran contend that they are entitled to qualified immunity on Whitworth's Fourth Amendment § 1983 claims. "Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Meshal v. Comm'r, Georgia Dep't of Pub. Safety*, 117 F.4th 1273, 1283 (11th Cir. 2024) (quoting *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016)). Where, as here, there is no dispute that the officers were acting in the scope of their discretionary authority at the time of the challenged actions, the plaintiff must plead facts "showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

[2] Whitworth, who is proceeding *pro se* and *in forma pauperis*, initially brought separate claims against the officers for fabrication of evidence and excessive force, but the Court previously concluded that those claims were subsumed under her false arrest claim. Whitworth also brought a claim for deliberate indifference to a serious medical need, but that claim was dismissed at the initial screening stage.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Whitworth asserts that Defendants violated her clearly established Fourth Amendment rights by (1) prolonging the traffic stop longer than necessary, (2) searching her person, and (3) searching her car and arresting her. The Court addresses each issue in turn.

**I. The Prolonged Stop Claim Against Roach and Cochran**

Whitworth does not appear to dispute that Roach observed Turner failing to maintain lane and that he was thus allowed to stop the vehicle to investigate the traffic violation. Whitworth does allege that Roach unconstitutionally prolonged the stop and that Cochran was on the scene and agreed with Roach's decision to prolong the stop to wait for the K-9 unit. Defendants acknowledge that it was clearly established before 2023 that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). The Fourth Amendment allows inquiries incident to the traffic stop, such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355. The Fourth Amendment also tolerates "unrelated investigations" during a traffic stop if they do not "lengthen the roadside

detention." *Id.* at 354. But a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete the mission" of issuing a citation. *Id.* (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). A dog sniff "is not an ordinary incident of a traffic stop," so the Fourth Amendment does not allow an officer to prolong a traffic stop pending a dog sniff, "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 355-56.

Whitworth alleges that Roach, with Cochran's agreement, decided to wait more than thirty minutes for a K-9 unit to arrive for a dog sniff. Whitworth further alleges that during the traffic stop, Roach did not perform the usual investigations incident to a traffic stop, such as running Turner's driver's license, checking the vehicle registration, or verifying insurance. Instead, Whitworth alleges Roach launched a drug investigation without any basis to do so. Cochran was present and helped Roach decide to wait for the K-9 unit. Defendants do not dispute that thirty minutes was longer than necessary to complete a simple traffic stop under the circumstances presented here, but they do argue that Roach had reasonable suspicion to extend the traffic stop and pursue a drug investigation. Defendants appear to contend that because Roach asked Whitworth and Turner about drugs (which they denied using and denied possessing) and he perceived that Turner was nervous, he had a reasonable articulable suspicion that Whitworth and Turner were

engaged in drug-related criminal activity. But Defendants did not point to any "specific and articulable facts in the allegations . . . that provide anything more than an inchoate and unparticularized suspicion or hunch that" Whitworth or Turner was engaged in criminal activity unrelated to the traffic stop. *Meshal*, 117 F.4th at 1284. Accordingly, Roach and Cochran are not entitled to qualified immunity on the prolonged stop claim.

**II. The Personal Search Claim Against Roach and Nunn**

Whitworth's next claim is based on the search of her person that Roach ordered and Nunn conducted. During a lawful traffic stop, an officer may conduct a limited personal search of the vehicle's occupants to check for weapons, but it is clearly established that such a search may be done only if "the officer has a reasonable suspicion that the person may be armed and dangerous." *United States v. Bishop*, 940 F.3d 1242, 1248 (11th Cir. 2019). "Reasonable suspicion that an individual is armed and dangerous exists so long as 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Id.* (quoting *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002)). "To determine whether a suspicion was reasonable," the courts "evaluate the totality of the circumstances surrounding the stop, including the collective knowledge of all officers involved in the stop." *Id.* at 1249.

Defendants did not point to any factual allegations establishing that Roach, Nunn, or a reasonably prudent person in the circumstances would believe that Whitfield posed a danger to the officers' safety or to others. Defendants argue that Roach's conduct in ordering the search and Nunn's actions in performing it were justified because Roach had escalated the traffic stop based on his suspicion of drug activity. As discussed above, though, Defendants did not point to any factual allegations that support a reasonable suspicion of drug activity. Accordingly, Roach and Nunn are not entitled to qualified immunity for the personal search of Whitworth.

**III. The False Arrest Claim Against All Defendants**

Whitworth's final claim is that Roach, Nunn, and Cochran illegally searched her vehicle, that Roach falsely claimed that he found drugs in the car, and that Roach, after conferring with the other officers, arrested Whitworth for possessing drugs even though the officers found no drugs. It is clearly established that a warrantless arrest without probable cause violates the Constitution. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (quoting *United States v. Floyd*,

281 F.3d 1346, 1348 (11th Cir.2002) (per curiam)). Even if an officer did not have probable cause for an arrest, he is entitled to qualified immunity if he had arguable probable cause—meaning that a reasonable officer in the same circumstances and possessing the same knowledge could have believed that probable cause existed to arrest. *Id.* It is clearly established that if an officer makes deliberately "false statements to establish probable cause or arguable probable cause," then "reasonable officers in the same circumstances and possessing the same knowledge as the defendant officer cannot believe that probable cause existed for the arrest." *Adams v. City of Ormond Beach*, 514 F. App'x 952, 955 (11th Cir. 2013) (per curiam) (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1233 (11th Cir. 2004), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020)).

Here, Defendants appear to argue that there was probable cause to arrest Whitworth for possessing drugs because Roach believed that the dog sniff resulted in a positive alert. But Whitworth alleges that officers found no drugs in the car or on Whitworth's person and that officers falsely claimed that they found drugs to manufacture probable cause for Whitworth's arrest. Defendants did not point to any Georgia statute that would have permitted them to arrest Whitworth for illegal drug possession without finding any illegal drugs. Under these circumstances, a reasonable officer in

Defendants' circumstances could not have believed that probable cause existed to arrest Whitworth for drug possession.

CONCLUSION

For the reasons set forth above, the Court denies Defendants' motions to dismiss (ECF Nos. 27, 28 & 29).

IT IS SO ORDERED, this 5th day of November, 2026.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA